1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  MARIE BETH D., | Case No.: 3:24-cv-00525-W-AHG |
| 12                          Plaintiff, | **REPORT AND** |
| 13  v. | **RECOMMENDATION REGARDING** |
| 14  MICHELLE KING, Acting Commissioner | **JOINT MOTION FOR JUDICIAL** |
|     of Social Security, [1] | **REVIEW** |
| 15 | |
| 16                          Defendant. | **[ECF No. 12]** |
| 17 | |
| 18 | |
| 19 | |

20

21

22

23

24

25 ─────────────────

26  [1] Michelle King became the Acting Commissioner of the Social Security Administration
27  on January 20, 2025. Although Plaintiff originally brought this action against Former
    Commissioner Martin O'Malley, this case may properly proceed against Michelle King
28  pursuant to 42 U.S.C. § 405(g).

1

Plaintiff Marie Beth D. ("Plaintiff") filed this action on March 20, 2024, seeking review of the Commissioner of Social Security's ("Commissioner") denial of her application for disability benefits. ECF No. 1. Pursuant to the Court's Scheduling Order, the parties filed a Joint Motion for Judicial Review on September 27, 2024, stating their positions on the disputed issues in the case. ECF No. 12. This matter is now before the Court for a Report and Recommendation ("R&R") on the Joint Motion for Judicial Review pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.2(d) of the United States District Court for the Southern District of California.

After a thorough review of the parties' submissions, the administrative record, and applicable law, the undersigned **RECOMMENDS** that the Court **AFFIRM** the Commissioner's denial of disability benefits.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act on July 7, 2022. Certified Administrative Record ("AR") AR 22, 273. Plaintiff also filed an application for supplemental security income pursuant to Title XVI on July 7, 2022. AR 22, 283. In both applications, Plaintiff alleged a disability onset date of December 2, 2018. AR 22, 269, 275. The Commissioner denied Plaintiff's claims for disability insurance benefits and supplemental security income upon initial review on December 22, 2022, and again upon reconsideration on March 2, 2023. AR 174, 181. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place telephonically on August 28, 2023. AR 49-86.

On December 21, 2023, the ALJ issued an unfavorable decision denying Plaintiff's current applications, finding that although Plaintiff could not perform her past relevant work, she could perform work that exists in significant numbers in the national economy, and had thus not been disabled from her alleged disability onset date through the date of the ALJ's decision. AR 35-37.

Plaintiff requested review of the ALJ's decision by the Appeals Council. AR 3. The Appeals Council denied Plaintiff's request for review on February 13, 2024, making the

ALJ's decision the final decision of the Commissioner. AR 3-5. Plaintiff timely appealed the denial to this Court for judicial review on March 20, 2024. ECF No. 1; 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010).

Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The standard requires "more than a mere scintilla" of evidence, "but less than a preponderance." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). The standard is "highly deferential." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). Thus, "'[w]here evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Burch v. Barnhart*, 400 F.3d at 676, 679 (9th Cir. 2005)). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The ALJ is responsible for determining credibility and resolving conflicts in medical testimony and is also responsible for resolving any ambiguities in the record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.*; *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

The Court may also overturn the Commissioner's denial of benefits if the denial is based on legal error. *Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 929 (9th Cir. 2014). However, even if the Court finds the decision was based on legal error, a court may not reverse an ALJ's decision if the error is harmless, "which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Id.* at 932 (internal quotations and citation omitted); *see also Burch*, 400 F.3d at 679 (citation omitted).

### III.    SUMMARY OF ALJ'S FINDINGS

#### A. The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 404.1520;[2] *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled, and the claim is denied. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

If the claimant is not currently engaged in substantial gainful activity, the second step requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities, and which has lasted or is expected to last for a continuous period of at least 12 months; if not, a finding of nondisability is made and the claim is denied. *Id. See also* 20 C.F.R.

---

[2] Unless otherwise noted, all references to the agency regulations herein are to the regulations in effect at the time of the ALJ's decision. *See, e.g.*, SSR 16-3, 2016 SSR LEXIS 4 n.27 (S.S.A. 2016) ("When a Federal court reviews our final decision in a claim, we expect the court will review the final decision using the rules that were in effect at the time we issued the decision under review."); *Anne B. v. Comm'r, Soc. Sec. Admin.*, No. 1:18-CV-02146-HZ, 2019 WL 6976034, at *8 (D. Or. Dec. 20, 2019) (collecting cases for the proposition that "[t]he applicable regulations are those in effect at the time the ALJ issued his decision"). The regulations governing Title II disability insurance benefits ("DIB") are located in 20 C.F.R. §§ 404.1 *et seq*. The regulations governing Title XVI supplemental security income ("SSI") are located in 20 C.F.R. §§ 416.101 *et seq*.

§ 404.1509 (setting forth the 12-month duration requirement). If the claimant has a "severe" impairment or combination of impairments, the third step requires the ALJ to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed, and benefits are awarded. *Lounsburry*, 468 F.3d at 1114.

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the ALJ proceeds to the fourth step of the disability evaluation process. The fourth step requires the ALJ to determine whether the claimant has sufficient residual functional capacity ("RFC") to perform her past work. *Id.* Therefore, the ALJ must determine the claimant's RFC before moving to step four.

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-9p, 1996 WL 374184, at *1 (July 2, 1996). It reflects the most a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). An RFC assessment must include an individual's functional limitations or restrictions as a result of all of her impairments – even those that are not severe (*see* 20 C.F.R. § 404.1545(a)(1)-(2), (e)) – and must assess her "work-related abilities on a function-by-function basis." SSR 96-9p, 1996 WL 374184, at *1; *see also Valentine*, 574 F.3d at 690 ("an RFC that fails to take into account a claimant's limitations is defective"). An ALJ errs when he provides an incomplete RFC that ignores or discounts "significant and probative evidence" favorable to a claimant's position. *Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th Cir. 2012).

An RFC assessment is ultimately an administrative finding reserved to the ALJ. 20 C.F.R. § 404.1527(d)(2). However, an RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. 20 C.F.R. § 404.1545. A court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal

standards and substantial evidence in the record as a whole supports the decision. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

At step four of the disability analysis, if the ALJ determines a claimant has sufficient RFC to perform past relevant work, the claimant is not disabled, and the claim is denied. *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). The claimant has the burden of proving that she is unable to perform past relevant work at step four. *Id.* If the claimant meets this burden, a *prima facie* case of disability is established. *Id.*

At step five, the burden then shifts to the ALJ to establish that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, taking into account the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1560(c)(1), (c)(2); *see also* 20 C.F.R. § 404.1520(g)(1). The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. § 404.1520; *Tackett*, 180 F.3d at 1099.

### B. The ALJ's Application of the Five-Step Process in This Case

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of December 2, 2018. AR 25. At step two, the ALJ determined that Plaintiff had the severe impairments of bilateral peroneal neuropathy at the knees and cervical degenerative disc disease. AR 25. After applying the required "special technique" to evaluate mental impairments at step two, the ALJ determined that Plaintiff has mild limitations in understanding, remembering, or applying information; no limitation in interacting with others; and mild limitations in concentrating, persisting, or maintaining pace. AR 26. The ALJ also determined that Plaintiff has mild limitations in adapting or managing oneself. AR 26. *See also* 20 C.F.R. § 1520a(a)-(c) (outlining the "special technique" for identifying and rating the degree of functional limitation resulting from mental impairments at step two).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the

impairments in the Listing, noting in particular that he had considered Listings 1.15 (disorders of the skeletal spine) and 11.14 (peripheral neuropathy). AR 28.

Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, as defined by 20 C.F.R. §§ 404.1567(a) and 416.967(a), with certain postural limitations. AR 28. Specifically, the ALJ determined that Plaintiff can perform occasionally postural activities, but she cannot climb ladders, ropes, or scaffolds. AR 28. In addition, she cannot have concentrated exposure to vibration, unprotected heights or hazardous machinery. AR 28.

At step four, the ALJ concluded that Plaintiff is not capable of performing her past relevant work as an Informal Waitress (light, semi-skilled), Bartender (light, semi-skilled), Warehouse Worker (medium, unskilled) or Medical Assistant (light, skilled). AR 35. The ALJ reached this conclusion based on the testimony of the vocational expert, who opined during the hearing that the demands of Plaintiff's past relevant work would be precluded by the RFC assigned by the ALJ. AR 35. The ALJ therefore proceeded to step five.

At step five, the ALJ considered that Plaintiff was a "younger individual" as of the alleged disability onset date and Plaintiff has at least a high school education. AR 36. The vocational expert testified that Plaintiff could perform the sedentary jobs of Account Charge Clerk, Call Out Operator, and Lens Inserter. AR 36-37. Based on the vocational expert's testimony, the ALJ found that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," so therefore Plaintiff was not disabled. AR 37.

## IV.    DISCUSSION

Plaintiff brings four claims of error in the Joint Motion: 1) the ALJ failed to properly analyze Plaintiff's subjective symptom testimony; 2) the ALJ failed to properly evaluate the medical opinion of Plaintiff's treating provider, Dr. Frederic Martin; 3) the ALJ failed to properly evaluate the medical opinion of the consultative examiner, Dr. Thomas Schweller; and 4) the ALJ erroneously omitted mental limitations from the RFC and from the hypothetical question posed to the vocational expert. ECF No. 12 at 3.

**A. The ALJ Did Not Err in His Evaluation of Plaintiff's Testimony**

Plaintiff asserts that the ALJ erred in discounting her testimony regarding her symptoms of pain and physical dysfunction. Defendant contends that the ALJ properly evaluated Plaintiff's symptom testimony based on the record evidence.

**1. Legal Standard**

An ALJ evaluating a claimant's testimony regarding the extent of her symptoms and impairments must follow a two-step inquiry. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). First, an ALJ must assess whether there is objective medical evidence to support the testimony. *Id.* If that is the case, and there is no evidence of malingering, an ALJ "can only reject the claimant's testimony about the severity of the symptoms if he gives 'specific, clear and convincing reasons' for the rejection." *Id.* (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). An ALJ must "specifically identify the testimony she or he finds not to be credible ... and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014)). An ALJ's decision must be "sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony.'" *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991).[3] "[A]n ALJ may

---

[3] On March 28, 2016, the Social Security Administration issued new guidance regarding how to evaluate a claimant's subjective symptom testimony. *See* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016); 2017 WL 5180304 (Oct. 25, 2017) (clarifying SSR 16-3p). Additionally, effective March 27, 2017, the Social Security Administration updated the relevant agency regulations regarding how a claimant's symptoms are evaluated. *See* 20 C.F.R. § 404.159. Although the ALJ's opinion was issued after these changes, the jurisprudence governing the applicable two-step inquiry remains good law. *See, e.g.*, *Campbell v. Saul*, 848 F. App'x 718, 721 (9th Cir. 2021) (applying the two-step inquiry in a recent case appealing an ALJ's decision from 2018, in which the newer regulations were applied); *Vooge v. Saul*, 840 F. App'x 253, 254 (9th Cir. 2021) (same, in case involving an ALJ's opinion issued in January 2019). *See also Trevizo v. Berryhill*, 871 F.3d 664, 678

3:24-cv-00525-W-AHG

not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). It is solely within the ALJ's province to assess the credibility of the claimant's testimony. *Id.* A court is therefore "constrained to review the reasons the ALJ asserts." *Id.* (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)); *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

## 2. Plaintiff's Testimony

In an Exertion Questionnaire dated August 5, 2022, Plaintiff stated that she suffers from neuropathy. AR 353. She described experiencing pain after walking half a mile. AR 353. Though able to carry laundry and groceries, she requires two-hour rest periods or naps during the day. AR 354-355.

At a telephonic hearing on August 28, 2023, Plaintiff provided further testimony about her physical conditions. AR 51. Plaintiff described difficulty using the restroom—experiencing "shooting pain" that feels like "needles" when she places her feet on the ground. AR 63. Though Plaintiff can drive, she stated that "sometimes [] it hurts so bad where I have to, like, pull over because just pushing my foot—putting the pressure on my feet on the pedal hurts a lot." AR 64. To deal with swelling of her feet, Plaintiff reported elevating her legs waist-high and says she sits this way for most of the day. AR 65. Plaintiff also described being able to sit for no more than 20 minutes before needing to get up, walk around, or lie down. AR 68. Plaintiff finds it difficult to walk without a cane because her knees or ankles may give out and requires rest after walking the distance of "three small houses." AR 68. She reported experiencing pain in her wrist, elbows, back and feet when carrying anything over three pounds. AR 69. She also endures an itching sensation underneath the skin of her hands and has issues grasping objects due to the shaking of her hands. AR 69-70.

---

n.5 (9th Cir. 2017) (noting SSR 16-3p is consistent with existing Ninth Circuit precedent regarding the ALJ's assessments of an individual's testimony).

Plaintiff described taking multiple medications, which led to severe side effects including sleepiness. AR 66-67. Plaintiff stated that physical therapy and injections did not provide relief. AR 66. Plaintiff is able to walk 10 or 20 steps to reach the ocean, where she does feel relief when she immerses her feet. AR 59-60. She is also able to spend the majority of her waking hours in a seated position. AR 61. Though Plaintiff uses a cane, she testified that the cane was not prescribed by her treating provider, Dr. Martin. AR 70. Additionally, Plaintiff could not recount her doctor recommending any type of surgery for her back or cervical spine. AR 71.

### 3.  The ALJ's Assessment of Plaintiff's Symptom Testimony

The RFC adopted by the ALJ takes into consideration some of Plaintiff's symptoms. AR 30. The ALJ limited Plaintiff to sedentary work with additional postural restrictions. AR 28. Sedentary work is defined in 20 C.F.R. § 404.1567(a):

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

"Occasionally" means "occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Jan. 1, 1983). For sedentary work, this means that "periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." *Id.* The ALJ explained in his decision that this RFC accounts for Plaintiff's bilateral peroneal neuropathy at the knees. AR 30. The limitation to sedentary work addresses Plaintiff's symptoms of being unable to walk long distances and needing to sit most of the workday.

The RFC does not account for Plaintiff's testimony that she has to elevate her feet, experiences shooting pain while sitting, and is unable to concentrate due to her pain. The ALJ rejected Plaintiff's testimony about the extent of these symptoms because treatment

notes in the medical record show that although Plaintiff had decreased sensation in her feet, she retained 5/5 lower extremity strength and had a normal gait. AR 30. The ALJ recognized that some treatment notes from 2023 refer to an antalgic gait, but they are inconsistent with treatment notes from other contemporaneous medical visits. AR 30.

The Court finds sufficient support in the record for the ALJ's analysis. Treatment notes from Dr. Suthakar, a treating neurologist, on June 22, 2021, indicate normal muscle bulk and tone, 5/5 strength in all extremities, and normal gait. AR 489-90. Plaintiff was treated by Dr. Loomba for pain management in 2021 and 2022. His treatment notes from in-person examinations indicate normal lower extremity strength, AR 521, 534; and Plaintiff denied issues with balance difficulty, gait abnormality, and loss of strength during video visits. AR 525, 528. Treatment notes from physical exams by Plaintiff's primary care provider from approximately 2021 to 2023 indicate normal gait, normal coordination, and normal lower extremity strength. AR 543, 564, 645, 658.[4] In a consulting orthopedic evaluation from December 2022, Dr. Tran observed that Plaintiff ambulates with a "slow and guarded gait," could "perform toe walking or heel walking," and "tandem walking," albeit all slowly and with some pain. AR 613. Dr. Tran found that Plaintiff had 5/5 strength in her lower extremities, no postural or gait instability, and could stand or walk for 6 hours in an 8-hour workday. AR 617.

The Court recognizes, as did the ALJ, that there are other notes from physical examinations in the record that indicate problems with Plaintiff's gait. For example, Plaintiff's treating neurologist Dr. Martin noted a "somewhat antalgic gait" during several visits in late 2022 and 2023. AR 609, 628, 633, 672, 704. Dr. Schweller, a neurologist who performed a consultative examination in October 2023, observed "a wide-based unsteady gait with a slight steppage to both feet." AR 723. But these same doctors also found that Plaintiff had normal strength in her lower extremities. AR 672, 704, 723. Plaintiff argues

---

[4] Plaintiff had several other visits to her primary care physician, but the treatment notes from those visits do not reflect a physical examination of her neurological system.

that the ALJ relied too heavily on treatment notes from Plaintiff's allergist in April and July 2023 that reflected a normal gait, but the allergist's notes are consistent with the treatment notes from Plaintiff's primary care physician. *Compare* AR 677, 683, 691, 698, 712 *with* AR 543, 563, 645, 658. In this circumstance, where the ALJ has provided specific reasons supported by the record for discrediting Plaintiff's symptoms, the Court is not free to second-guess the ALJ's conclusions, even though some of the evidence in the record may be contradictory. *Batson v. Commissioner*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.").[5]

The ALJ addressed Plaintiff's symptom testimony regarding her upper extremities separately. AR 31. Plaintiff's complaints are that she experiences pain when carrying items over 3 pounds and has difficulty grasping objects because of tremors in her hands. AR 69-

---

[5] The ALJ did not specifically address Plaintiff's complaints about her ability to focus and concentrate due to pain. The record, however, supports that any failure to address this symptom is harmless. *See Batson*, 359 F.3d at 1197. The only medical evidence in the record regarding this symptom is a report from a consulting psychologist, Dr. Jerry Livesay, which conflicts with Plaintiff's testimony. AR 595. Dr. Livesay opined after examining Plaintiff in October 2022 that Plaintiff "was able to sustain her concentration and she worked at a persistent steady pace," and her "concentration was sustained and she was not unduly distracted." AR 597, 599. Similarly, although the ALJ's finding that Plaintiff can drive a car "without noted issues," AR 31, appears to be incorrect, it is not sufficient to call into question the ALJ's overall assessment of Plaintiff's testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (upholding an ALJ's decision even where two of the ALJ's reasons supporting his adverse credibility finding were invalid, because "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal. . . . Here, the ALJ's decision finding [the plaintiff] less than fully credible is valid, despite the errors identified above.") (internal alterations, quotations, and citation omitted); *Wells v. Comm'r of Soc. Sec.*, No. 1:17-CV-00078-SKO, 2017 WL 3620054, at *10 (E.D. Cal. Aug. 23, 2017) ("While the ALJ erred in providing one invalid reason for the credibility finding[,] that error was harmless, as substantial evidence still supports the ALJ's credibility determination notwithstanding the single errant rationale.").

3:24-cv-00525-W-AHG

70. The ALJ rejected this testimony based on treatment notes that show that Plaintiff had intact sensation and 5/5 strength in her upper extremities, an August 2021 nerve study with normal findings, limited references to hand tremors, and normal findings regarding grip strength and range of motion of her upper extremities. AR 31.

The Court finds sufficient support in the record for the ALJ's analysis. The treatment notes from neurologist Dr. Suthakar note that a nerve study conducted in April 2021 based on Plaintiff's complaints of tremors was normal. AR 502. Dr. Suthakar's treatment notes from June 2021 indicate no tremors and 5/5 strength in Plaintiff's upper extremities. Dr. Loomba's treatment notes indicate normal strength in the upper extremities upon examination in 2021 and 2022. AR 521, 534. Plaintiff denied tremors and tingling/numbness at televisits in 2021 and 2022. AR 525, 529. Although her primary care physician noted a "slight tremor b/l hands" at a March 2022 visit, Plaintiff stated at that visit that "she is able to type." AR 542. The report of a consultative orthopedic examination by Dr. Tran on December 5, 2022, notes reduced sensation in the right thumb, but Dr. Tran also found normal strength and grip, and no limitations on grasping or fingering. AR 618. Plaintiff's treating neurologist Dr. Martin noted in multiple examinations that Plaintiff had normal strength and "no tremors or other adventitious movements," even though she had diminished sensation in her hands. AR 605, 606, 609, 628, 632-33, 672, 704. As noted above, as long as the ALJ has properly supported his analysis based on a review of the entire record, the Court is not free to engage in second-guessing. *See Cook v. Saul*, 852 F. App'x 256, 259-60 (9th Cir. 2021); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The ALJ also addressed Plaintiff's neck pain separately. Although Plaintiff's medical records support that she has experienced neck pain in the past, the Court could not find any specific testimony by Plaintiff, either in her Exertion Questionnaire or from the hearing transcript, that focused on neck pain. Plaintiff's testimony focused primarily on the neuropathy in her lower limbs. Nonetheless, the ALJ discussed Plaintiff's neck limitations. The ALJ noted that an MRI in April 2021 confirmed that Plaintiff has degenerative disc disease, which was further confirmed by cervical x-rays. AR 32. Plaintiff reported

improvement with physical therapy. AR 32. Plaintiff received a cervical medial branch block in February 2022. AR 32. After that, the medical notes reflect either full range of motion or a mild limitation in her cervical range of motion. AR 32.

The Court finds sufficient support in the record for the ALJ's analysis. Plaintiff received physical therapy for neck pain in 2021. The therapist's notes indicate improvement with treatment. AR 448. The notes from physical examinations by various doctors over more than two years indicate either full range of motion or a mild limitation in her cervical range of motion. AR 605, 608, 627, 632, 671, 704. The orthopedic consultative examiner found Plaintiff had normal cervical range of motion in December 2022. AR 617. Plaintiff had a full range of motion in her neck at the neurological consultative examination in October 2023. AR 723.

The undersigned finds no error in the ALJ's evaluation of Plaintiff's testimony.

### B. The ALJ Properly Assessed the Medical Opinions

Plaintiff asserts that the ALJ failed to properly evaluate the medical opinions of Plaintiff's treating provider, Dr. Martin, and the consultative examining neurologist, Dr. Schweller. Defendant contends that the ALJ's decision should be affirmed because the ALJ provided substantial evidence to support his findings that Dr. Martin's opinion was not persuasive and Dr. Schweller's opinion was partially persuasive.

### 1. Legal Standard

The ALJ "need not take every medical opinion at face value." *Cross v. O'Malley*, 89 F.4th 1211, 1213 (9th Cir. 2024). "Rather, the ALJ must scrutinize the various – often conflicting – medical opinions to determine how much weight to afford each opinion." *Id.* at 1213-14. As the ALJ undertakes this analysis, the most critical factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(a); *id.* § 416.920c(a). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical

sources and nonmedical sources in the claim." *Id.* at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). In assessing a medical opinion's persuasive value, the "ALJ need only provide an explanation supported by substantial evidence." *Kitchen*, 82 F.4th at 740.

### 2. Dr. Martin's Opinion

Dr. Martin completed a Physical Assessment of Plaintiff on March 29, 2023. AR 623-24. He diagnosed Plaintiff with peripheral neuropathy, chronic cervical pain, and chronic lumbar pain. AR 623. He opined that Plaintiff's symptoms were so severe that they would constantly interfere with the attention and concentration required to perform simple work-related tasks. AR 623. He opined that Plaintiff would need to take excessive breaks, could sit 2-3 hours, and stand or walk 1 hour in an 8-hour workday. AR 623. He opined that Plaintiff could use her hands for grasping, turning, and twisting objects less than 5% percent of an 8-hour workday, and Plaintiff could not perform fine manipulation duties at all. AR 623. He opined that Plaintiff would be absent from work as a result of her impairments more than 4 times per month. AR 623.

The ALJ found Dr. Martin's opinion unpersuasive because the record does not support: 1) issues with attention or concentration; 2) the sitting, standing, and walking limitations; 3) the lifting, carrying, and upper extremity limitations; and 4) the finding that Plaintiff would be absent more than 4 days per month. AR 33-34. Substantial evidence supports the ALJ's finding.

With respect to issues with attention and concentration, the ALJ relied on the report of Dr. Livesay's consultative psychological examination on October 13, 2022. AR 595-600. Dr. Livesay reported that Plaintiff was able to maintain concentration during the examination and performed well on several cognitive tests. AR 33. The undersigned's review of Dr. Livesay's report indicates it is consistent with the ALJ's analysis. Plaintiff argues that Dr. Livesay's report is insufficient to support rejecting Dr. Martin's opinion because there is a material difference between maintaining concentration during a medical evaluation and maintaining concentration in an employment setting. ECF No. 12 at 27. Dr. Martin's opinion, however, directly contradicted Dr. Livesay. If Plaintiff's pain would

"constantly" interfere with her work activities, it would be reasonable to expect that it would also impact her during a medical evaluation where she was asked to perform multiple cognitive tasks. Therefore, the ALJ adequately provided a reasonable explanation supported by substantial evidence in the record for rejecting this portion of Dr. Martin's opinion, which is all that is required. *Sara M. v. Kijakazi*, No. 5:21-CV-01554-JC, 2022 WL 17968073, at *7 (C.D. Cal. Dec. 23, 2022).

With respect to the sitting, standing, and walking limitations, the ALJ recognized that the nerve conduction study and reduced sensation in the lower extremities warrant some accommodation for her neuropathy. AR 33. The ALJ addressed those issues by limiting Plaintiff to sedentary work in the RFC. AR 33. The ALJ considered Dr. Martin's opinion that greater limitations were necessary, but rejected it based on multiple references in Plaintiff's treatment records that reflected normal strength in the lower extremities and Plaintiff's activities, including riding a bike and driving. AR 33. The undersigned's review of the record confirms that it is consistent with the ALJ's analysis. AR 489, 490, 521, 525, 528, 534, 543, 564, 596, 613, 617, 645, 648.

With respect to the lifting, carrying, and upper extremity limitations, the ALJ found them to be extreme in light of the medical evidence. AR 33. Although Plaintiff had reported some hand numbness and there were notes reflecting reduced sensation in her hands, the treatment notes also show that Plaintiff had normal strength in her upper extremities and a nerve conduction study on her upper extremities was normal. AR 33. Dr. Martin's own treatment notes state consistently that Plaintiff's "fine finger movements are intact," AR 605-06, 609, 633, 672, 704, which directly contradicts his opinion that Plaintiff could not perform fine manipulation duties at all. AR 623.

With respect to the findings that Plaintiff would be absent more than four days in a month, the ALJ found them to be unsupported because Dr. Martin did not document any limitations in his treatment records to support this opinion, and Dr. Martin does not provide any explanation for this finding in his opinion. AR 34. The undersigned's review of the entire record confirms this finding.

The ALJ's analysis of and reliance on the record to explain his reasons for finding Dr. Martin's opinion unpersuasive are sufficient to meet the supportability and consistency standard. The ALJ's assessment of Dr. Martin's opinion is supported by substantial evidence. Therefore, the Court should reject Plaintiff's second claim of error.

### 3. Dr. Schweller's Opinion

Dr. Schweller conducted a neurological consultative examination of Plaintiff on October 10, 2023. AR 722. He opined that Plaintiff:

> Would be able to stand and walk for 30 minutes out of an eight-hour day and sit for six hours out of an eight-hour day. She would be able to lift 10 pounds occasionally and 10 pounds frequently. She would be unable to ambulate without an assistive device. There would be occasional limits in bending, stooping, squatting, kneeling and crawling. There would be no significant limits of upper extremity fine or gross manipulation. She requires a cane for ambulation and should avoid unprotected heights and exposure to moving machinery.

AR 34. The ALJ found Dr. Schweller's opinion to be partially persuasive. He rejected Dr. Schweller's opinions that Plaintiff was limited to standing or walking for 30 minutes out of an eight-hour day and that Plaintiff needed a cane to walk on the grounds that they "are not consistent with the totality of the evidence." AR 34. The ALJ pointed out that Plaintiff "did not exhibit these same limitations with other treatment providers in 2023 or at her initial appointment with Dr. Martin, which was just shortly before her December 2022 consultative examination." AR 34. The undersigned finds that the ALJ accurately summarized the record evidence, which is inconsistent with respect to the Plaintiff's gait and ability to walk without a cane. AR 489, 490, 521, 525, 528, 534, 543, 564, 613, 617, 645, 648. Contrary to Plaintiff's suggestion, significant portions of the record are from observations of a neurologist, pain specialist, or orthopedic specialist – not an allergist or Plaintiff's primary care physician. *E.g.*, AR 489, 490 (neurologist); 521, 525, 528, 534 (pain specialist); 613, 617 (orthopedic specialist). It does not appear that the ALJ cherry-picked the record to reach his conclusion; instead, he discussed the conflicting evidence and made a determination that Dr. Schweller's opinion was partially persuasive

in light of the evidence. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. The undersigned recommends the Court reject Plaintiff's third claim of error on this ground.

### C. The ALJ Was Not Required to Include Plaintiff's Mental Limitations in the RFC

Plaintiff contends that the ALJ erred by formulating an RFC that contained no mental work restrictions, even though the ALJ found that Plaintiff had mild limitations in concentration, persistence, and maintaining pace; and in adapting and managing herself. Plaintiff additionally argues that the ALJ should have posed hypothetical questions to the vocational expert that included these mild limitations. Plaintiff further contends that the ALJ compounded this error by ignoring additional mild limitations in Plaintiff's ability to respond to changes in a routine work setting and respond to changes to work pressures in a usual work setting found by the consultative psychological examiner, Dr. Livesay, even though the ALJ found Dr. Livesay's opinion persuasive.

Defendant disagrees that the ALJ was required to incorporate any mild mental limitations in the RFC or the hypotheticals posed to the Vocational Examiner, and argues that Plaintiff fails to explain how incorporating the limitations would result in a finding that she could not perform the jobs identified by the ALJ at step five.

### 1. Legal Standard

At step two of the disability evaluation process, the ALJ did not find that Plaintiff had any severe mental impairments. AR 25. Notwithstanding this finding, the ALJ was required by the regulations to consider the limiting effects of all of Plaintiff's impairments, even those that are not severe, in determining Plaintiff's RFC. 20 C.F.R. § 404.1545(e). *See also* SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). Following these requirements, at step two, the ALJ considered the four broad functional areas of mental functioning set forth in the

regulations for evaluating mental disorders. These four functional areas include (1) understanding, remembering, and applying information; (2) interacting with others; (3) concentration, persistence, or maintaining pace; and (4) adapting or managing oneself. *See* 20 C.F.R. § 404.1520a(c)(3) (listing these "four broad functional areas in which [the Agency] will rate the degree of [a claimant's] functional limitation" when evaluating mental impairments). These four functional areas are also known as the "paragraph B criteria" due to how they are categorized in the listings. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1.

The ALJ found that Plaintiff's non-severe mental impairments caused mild limitations in all four areas of mental functioning. AR 27. The ALJ's analysis was based on a psychological consultative examination by Dr. Livesay, AR 595-600, and the opinions of two state agency psychological consultants, Dr. Paxton and Dr. Dilger, AR 107- 26. The ALJ found their opinions "mostly persuasive," and Plaintiff does not challenge this finding. AR 27. The ALJ rejected Dr. Livesay's opinion that Plaintiff had a moderate impairment in daily activities because the record did not support that Plaintiff's housing situation was due to a mental impairment. AR 27. He rejected Dr. Paxton and Dr. Dilger's opinions that Plaintiff has a mild limitation in interacting with others because there was no support in the record for that conclusion. AR 27. The ALJ went on to state that the RFC he adopted "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." AR 27.

Plaintiff argues that the Court should follow *Hutton v. Astrue*, 491 F. App'x 850 (9th Cir. 2012), and find that the ALJ erred by not including Plaintiff's mild mental limitations in the RFC. In *Hutton*, the Ninth Circuit held in an unpublished opinion that an ALJ erred by failing to address the plaintiff's post-traumatic stress disorder ("PTSD") in the RFC determination and in the hypotheticals to the Vocational Expert in step five. *Id.* at 850. The ALJ considered the plaintiff's PTSD at step two and found mild mental limitations as a result. *Id.* In making the RFC determination, however, the ALJ expressly excluded the plaintiff's PTSD from consideration because he found the plaintiff was not credible. *Id.*

The Ninth Circuit held that this was error because "the ALJ was required to consider [plaintiff's] physical impairments and the 'mild' limitations his PTSD caused with concentration, persistence, or pace, regardless of whether the ALJ doubted that they were caused by [plaintiff's] ever-shifting military history." *Id.* at 850-51. *Hutton* is distinguishable, because here the ALJ engaged in a lengthy analysis of Plaintiff's mild mental impairments at step two and incorporated that analysis expressly in the RFC determination. AR 26-27. The ALJ also discussed the mental limitations in his RFC analysis when assessing the medical opinions of Dr. Martin and Dr. Recalde and explaining why he did not think the record supported mental limitations in the area of attention and concentration. AR 33.

In more recent published authority, the Ninth Circuit has held that to demonstrate that an ALJ erred by failing to incorporate mental limitations in the RFC, a plaintiff has to "identify … particular evidence that the ALJ failed to consider or explain why the record does not support the ALJ's findings" regarding mental functioning. *Woods*, 32 F.4th at 794. Plaintiff argues that because the ALJ found Dr. Livesay's opinion persuasive, he was compelled to either incorporate the mental limitations in Dr. Livesay's opinion or explain his decision not to include them. The undersigned disagrees. The ALJ's analysis confirms that he reviewed and considered Dr. Livesay's opinion thoroughly and considered Plaintiff's mild mental limitations when formulating the RFC.

Plaintiff's assertion of error with respect to the hypotheticals posed to the Vocational Examiner fails for the same reason. "It is … proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record." *Osenbrock. v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). If a mild limitation presents "no significant interference with the ability to perform basic work-related activities," it does not need to be included in the hypotheticals. *Id.* Here, as discussed above, there is substantial evidence in the record to support the ALJ's decision not to include Plaintiff's mild mental limitations expressly in the RFC or the hypotheticals posed to the Vocational Examiner. The

undersigned finds no error. Accordingly, the Court should reject Plaintiff's fourth claim of error.

## IV.    CONCLUSION

The Court submits this Report and Recommendation to United States District Judge Thomas J. Whelan under 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.2(d) of the United States District Court for the Southern District of California. For the reasons set forth above, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation, (2) **AFFIRMING** the decision of the Commissioner, and (3) directing that judgment be entered in the Commissioner's favor.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **March 3, 2025**. The document should be captioned "Objections to Report and Recommendation." Any Reply to the Objections shall be filed with the Court and served on all parties no later than **March 10, 2025.**

**IT IS SO ORDERED**.

Dated:  February 14, 2025

_____
Honorable Allison H. Goddard
United States Magistrate Judge